We'll take this opportunity to welcome the students from New Kent, Virginia. We hope you'll find today's proceedings interesting and educational. Thank you. Mr. Winthrop, we're ready to hear from you. Thank you, Your Honor. I didn't call the case United States v. Ebert, so now we're ready to hear from you. May it please the Court. My client, William Ebert, was denied a fair trial when the government introduced salacious but non-child pornographic evidence to prove him guilty of producing and possessing child pornographic material in violation of federal statutes. The government relied on two theories to have this evidence admitted over objection. Both theories were incorrectly applied to this case. To the extent that the evidence was probative under 404B, the prejudicial effect greatly outweighed the probative value. To the extent that the evidence was intrinsic, the facts fall out of the fact that this evidence was intrinsically intertwined in the case at hand. The crux of this case is that my client was originally charged in a superseding bill of indictment with three counts. The second count, which he was found guilty of, was production of pornographic material. The third count was possession. He was found not guilty of the first count, which was taking a child across state lines for an improper sexual purpose. Prior to the trial, the government filed a 404B notice. In the 404B notice, the government wanted to prove and present evidence of numerous extrinsic matters. One of the matters that they wanted to introduce were two videos of victim number one, who was the daughter of my client, engaging in non-pornographic material when she was of the age of 18 or older. What's critical about this is in these particular videos, there is evidence that when the videos were shot, the defendant was seen in a reflection and his voice was heard, and he was allegedly directing what transpired. In this particular case, the alleged victim's sister was present in one of these. Why this matters is these acts were not any evidence of criminal activity. The child was not naked. The child was wearing clothing. There was nothing illegal about what the court and what the jury heard when this evidence was presented. Counsel, I will divide the 404B evidence between HH, I think, victim number one, and ZN, because you may have a better argument for one than the other, but at least as to HH, the point is, as alleged by the government, that that video, whether or not it's criminal in nature, shows that your client did this type of video. There were videos in place before the victim was 18, so it shows the methodology. It shows he did that type of thing. That makes it intrinsic. Number one, why is that not proper under 404B? I agree you've got to be careful here. We have law on that. In answering that, if it was improper, why is it not harmless? Okay, so to address the intrinsic argument first, the government takes the position that this was grooming, that what they were doing, that what my client was allegedly doing, was initially, when the child was 13, 14, 15, he may have been taking photographs of her. Some were pornographic. Many were not. I think there were only two series of photographs that were allegedly, at some point, pornographic for child purposes, and I believe the child may have been 16 or 17 at the time. But for the purpose of grooming, the child's now over age, and the child's still wearing clothes. This doesn't go to the grooming aspect. This is something totally innocent. It may be creepy, as I say in my brief, but it's not a criminal to say that because he may have been the person that took the pictures or the video in 2018, he would have been the person that took the video before. That's getting the 404A character propensity evidence. As far as 404B… Why is that? I mean, why is it not the methodology? Is the evidence of what he did in a way that may have been non-criminal not related intrinsically to the methodology of the videos and photographs that were done allegedly in a criminal way? Well, even though the allegation was he took these videos, it's different only because he wasn't taking videos of her then. Her sister was involved. This activity was more garden variety, three people or two people just engaged in normal type photographs. It may be a little bit different, but what they're trying to say is because he did something and may be in poor taste at age 18 or 19, he would have been the one, the methodology as you might say, but it's a different methodology. Isn't that almost always a line of reasoning when you have the intrinsic evidence? I mean, it's a trail of common or similar acts. Wait a minute. The only difference here is that the daughter happened to have turned 18 for this last grouping. But the difference is for the subsequent videos, that wasn't a criminal act at all, and to say because he took videos of the daughter and with the other sister, one of them, the fact that he was doing something legal there doesn't show that it's grooming, that this is a carry forward from what he may have done before. What he was doing before was of a legal nature, and it was of a different nature. At some point, the government's allegation was he was taking pictures of her in the nude state. He was not doing that here. It had changed nature. It's the nature and the character. That's the distinction. So if the daughter had been nude in these particular ones, you would say that that was sufficient? If the child were nude and there was not another sister? But she would have been a child in the later ones. She would have been an adult. In the later ones, she would have been an adult. That's correct. But they don't have those videos. Right. But what I'm asking is if the daughter, as she turned 18, in these videos, was in the same degree of lack of clothing that she was in the other one, would you have said that your 404B argument was no more? Well, that would go more towards the intrinsic. I would argue for 404B. I see the argument, and I would say there's a distinction. I'm just asking the question. Yes. I see the distinction, and I would agree that what happened in the later photographs or videos was of a different nature and character and doesn't go to the methodology. I think your other question was, would it be harmless? Yes. I mean, let's assume hypothetically we agree with you on the videos of HH after she turned 18 and about the evidence related to ZN. I mean, don't you still have the testimonial evidence that was there? I think eight photographs before the age of 18. Why is that not enough to make a video at least of someone who's clothed harmless? Because in the other videos, it was only the word of HH as to who may have taken the photos. Remember that HH had a tattoo on her arm which was of the father's password. That there's evidence that the subsequent evidence is what was critical to the government because they could show the defendant's voice and reflection. They did not have that evidence in the other photographs. They had testimony and maybe this sealed that aspect of it, but they had testimony, right? And was there any real evidence that he wasn't the one who did the stuff before? I mean, I get it that he didn't testify as though he hadn't conceded it, but there wasn't any really argument to the contrary, was there? Well... Or certainly evidence to the contrary. The evidence was that... Certainly, HH testified that he was the one that took the photographs. That was all of the evidence that they had as far as that went. Why it's critical is, remember, she testified also that he engaged in the acts that were the nature of count one. And they got it from him, right? I mean, they got the photographs that might not have had him in them or his voice in them from him. From a computer in the house that I believe the testimony was other people in the house had access to and HH herself had the tattoo of the password on her – I think that was the testimony. Then we get to the testimony of ZN. ZN also – there was no evidence of any child pornography concerning her testimony. What they had was some creepy conversations that may have occurred between my client and ZN. There was some discussions of some untoward conduct. But again, none of that rose to the level of 404B. It was highly prejudicial to allow that in because it didn't go to the pornography. It went to other bad acts that he may have been engaged in under 404A. And even if it was 404B, when the jury would hear all of the different things that were in the Skype messages and her testimony about booby potions and whatnot, the jury could take that and consider that to be the issue and not necessarily the issue that the government had to prove. Were there limiting instructions given here? But if you read the limiting instructions – First answer, were there limiting instructions? There were limiting instructions. There were. But I believe the way the limiting instruction went, the court instructed or engaged in other acts or committed other acts. I think that was the terminology that the court used. Were there objections to the limiting instructions? I do not know that counsel objected to that limiting instruction. But when you hear that limiting instruction, the jury would certainly consider that something had to be wrong if it was a committed act. And there was nothing illegal, certainly not comfortable, but not illegal about what ZN was doing or in part what HH was doing. I only have two minutes. I would certainly assert that there was a probable cause issue. We certainly objected to that. We believe it was certainly stale. We know that when the officer, Officer Anderson, presented his affidavit, he tried to freshen up his stale argument with just some generic boilerplate information. But we would contend that was insufficient for a matcher to find that there was probable cause. So the government responds by saying even if we assume that to be true, the good faith exception would save the warrant. And you don't really address that in your papers. We don't. We address it in the form of it was freshened evidence and that no reasonable matcher would consider that there was such a boilerplate, bare-bones allegation. But no, it was not specifically addressed. But if you look at the actual affidavit as for probable cause, there were 60-some paragraphs. Only five or six paragraphs even dealt with this particular defendant. I believe one paragraph actually dealt with the allegation of the pornography. And it doesn't specify as to when this took place. It was anywhere from five to eight years before it was taken out. Or it doesn't even specify that you could have found this on what particular computer or at this particular location. So certainly we would argue that there was a good faith exception. Well, there was not a good faith exception. All right. Anything else you want to tell us before your rebuttal comes up? Yes, sir. All right. Thank you very much, Mr. Winthrop. Ms. Ray, we're glad to hear from you. Thank you, Your Honor. May it please the Court, Amy Ray for the United States. I guess I'll begin just very briefly where Mr. Winthrop left off with the probable cause argument. The district court did find that the good faith exception applied either way, and the defendant has not challenged that in his opening brief, so that's waived. Additionally, I would say that this Court's decision in BOSIC really responds very well to the argument that the suggestion that because an agent relies on what we know about child pornography offenses and has a significant amount of language in the affidavit about child pornography offenses, the collectors tend to retain those, not even collectors, even more to the point in this case a producer who produced child pornography of his own daughter, that that's the kind of evidence that someone would keep and retain. Can I ask a question about that? Does that effectively read staleness out of any case involving child pornography collection and or production? It makes it very difficult, Your Honor. In fact, in this Court's decision in BOSIC, this Court referred and cited positively the Seventh Circuit's decision in Sevier, which says essentially in cases involving a computer, staleness is almost never an issue. I'm not going to suggest that there's not an outer limit to that, but I would say that five years doesn't come close to it. The Seventh Circuit's decision in Carroll involved a five-year delay, and they affirmed that that information was not stale in a child pornography case. The Tenth Circuit's decision in Riccardi, I think, was four—actually, maybe Carroll was four years, and I think Riccardi was five years with a receipt. When you have the kind of evidence that is retained, it's not contraband, it's not smoked up, it's not used, then it requires a much lengthier period of time, and I think this Court's decision in BOSIC really supports that. Turning to the evidentiary issue, if Your Honors don't have any further questions about the Fourth Amendment issue, I'll move to the evidentiary issues that the defendant raises. The district court admitted both the videos of H.H. and the testimony and chats by Z.N. under two independent reasons. First is intrinsic. The second was under 404B as evidence of identity preparation and plan. To answer Judge Agee's question, there were three limiting instructions given, and those were on pages 135, 177, and 255 of the joint appendix. Two of those limiting instructions were given immediately after the admission on the one case of the H.H. videos and the other case and the admission and the overruling of the objection with respect to Z.N.'s testimony. They specifically, Judge Whitney said, I'm admitting these evidence as intrinsic, I believe it's inextricably intertwined, and for evidence of intent, preparation, and planning. The district court didn't simply say something about other acts, it was pretty specific limiting instructions. On the merits of it, the videos of H.H. depict that relationship, and it depicts the crime that Mr. Ebert committed as it was finally and fully revealed. That is to say, a young woman at 18 years old who would look at her father and smile and pose suggestively when he asked her to. That was the result of seven years, at that point, of grooming. That is inextricably intertwined because not only it shows the result of what happens when you take a child beginning at the age of 11, and you instruct her to masturbate in front of a camera and do other, finally leading up to the 17-year-old, at least eight photographs of the sexually explicit. That's intertwined because it is the fruition of the crime. It completes the story. This court in Byers recognized that although some evidence may be prejudicial under 404B, it's not overly prejudicial if the evidence is less inflammatory or prejudicial than other evidence that was admitted. These videos were certainly not more prejudicial than the photographs that the jury saw. That's the intrinsic evidence on the HH videos, 404B. Those videos had a reflection of him that you could see Mr. Ebert in the video and his voice. It was not arbitrary or irrational for the court to conclude that those videos were evidence of Mr. Ebert's identity and also his plan preparation. Turning to the evidence related to ZN, those also were inextricably intertwined. The reason is HH testified, and this is both why it's inextricably intertwined and why it's harmless. HH testified about her chats with ZN. She testified at some length. I would refer the court to 246, 259, 264, 308 of the Joint Appendix. She talked about how she talked with her dad about his conversations with ZN. Of course, he instructed her to or actually gave her photographs of naked women and said, go show these to ZN. By the way, take my return address off of this email. Don't just forward it so that you can see that I sent these to you. That's evidence that he knew what he was doing. The other commonalities there were he discussed challenges. He talked to HH from a very young age and offered her challenges related to her sexual activity. He says the same thing to ZN. ZN testifies that he described what he wanted her to do as challenges. In both cases, he talked about the sign. One thing I particularly get to ZN is that it's not just that it completes the story, because you can say that in all candor in lots of situations. I think our more recent law says it has to be essential to the completion of the story. The HH seems like a different situation. The ZN, I don't think it relates. There's some commonality to be sure. But it doesn't seem essential in any way to the completion of the story. If that's allowed, I'm just worried about where are the limiting principles there. It seems like that's, now I'm not sure, even if it's improper, that it's not harmless in this particular case. But that seems like a much tougher argument. Your Honor, I appreciate that the argument is harder with respect to ZN than it is, I believe, with respect to the HH videos. But it's also not just the completion of the story, but it's inextricably intertwined. And that's why I was saying, HH herself testifies it, because she's testifying about the conversations that her dad had with her about his engagement with ZN, and he's asking her to engage in a sexual relationship with ZN. So it's inextricably intertwined. Certainly, however, it is also harmless. And it's harmless because we have HH's testimony at length talking about the same relationship with ZN, talking about the fact that her dad told HH and admitted that he had talked with ZN about masturbation and engaging in sexual activity with HH. And so it's harmless because it simply is, in some ways, it's repetitive of what HH has testified to. Were there objections to that testimony? No, not to HH's testimony, no, about that relationship. There was not an objection. The other thing I want to note, because I think that we're, and my brief probably didn't do the best job about highlighting this, there was additional evidence that Mr. Ebert was the one who did it. It didn't all depend on HH. Michael Ebert testified that after HH made her allegations, he had a conversation with his father. His father admitted having taken pictures of HH nude and said they were tasteful nudes. So that wasn't a huge part of our case, but I would just say that our case didn't hinge only on HH and those photographs. We did have other evidence that supported it. And in any event, we had overwhelming evidence outside of ZN's testimony or the chats involving ZN that supported Mr. Ebert's guilt. Mr. Ebert has made, Mr. Winthrop, on behalf of Mr. Ebert, has also made a sentencing argument related to the five-level enhancement under 4B1.5. I would simply note that that enhancement is appropriate as long as the defendant engaged in two instances of production of child pornography, and our brief kind of goes through the steps as to why that's the case. We have, in addition to those six or eight, rather, multiple photographs of her when she was 17, nude explicitly focusing on her genitalia, we also have the evidence that at the age of 13 he asked her to film herself masturbating on his web camera, and that also would be the second set of instances. I don't think that that's acknowledged in the opening brief. Mr. Ebert's brief just focuses on those 17-year-old photographs. So that would be the pattern, and there are other instances in our brief that we cite to support that increase. If Your Honors don't have any further questions, the United States requests that this court affirm the judgment of the district court. Thank you. All right, thank you very much, Ms. Ray. Mr. Winthrop, we've got some rebuttal time. If I could get you to start with the sentencing enhancement. Reading the argument you made in your brief on that, the enhancement was under 4B1.5, but the brief seems to talk more about 2G2.2, so my question is whether or not you've briefed the correct guideline. Your Honor, I think I put the wrong statute when I was talking about this argument. But you agree that the enhancement is under 4B1.5? I do. Okay. But I would also argue under 4B1.5 that it requires a pattern of behavior, and I don't know. There was one video set of the eight photographs, and there was some other alleged activity. I don't know that it requires that. But, Your Honor, I do want to address what Ms. Ray had to say concerning ZN and your questions to her. In our brief, what we argued was we have a cumulative effect of the 404B for intrinsic evidence for HH and for ZN. So we talk about both the HH evidence, the ZN evidence, and then the combined cumulative effect. And what we would contend is, cumulatively, when the jury hears the extrinsic or intrinsic evidence of ZN, that together with the evidence of when the child was 18 for 404B or whether it's intrinsic, once again, we get to the point that this evidence becomes cumulative, and that's not really evidence of what actually occurred with the direct allegations of what the defendant was charged with. So we would say, based on all the evidence, if you consider the probative value and the prejudicial effect under 403, we're asking the court to overturn the conviction and to give my client a new trial. All right. Thank you very much. I want to express my appreciation on behalf of the panel to both counsel for their arguments, and to you in particular, Mr. Renthrop. I see you were court-appointed. The court could not discharge its duties in these cases if we didn't have members of the bar like you who would step up and undertake them, and the court expresses its appreciation for that. As you probably have seen in our earlier cases, our COVID restrictions prevent us from coming down and greeting counsel in person, so we hope you'll return on another occasion when we can do that. And with that, I'll ask the clerk to adjourn court until tomorrow morning. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court. Thank you.
judges: G. Steven Agee, Albert Diaz, A. Marvin Quattlebaum Jr.